and Mr. Babcock if you want to reserve some time for rebuttal even if you've already settled that with the clerk can you let us know please sure your honor Russell Babcock here on behalf of the plaintiff and yes I have reserved four minutes for rebuttal today I'd like to start off with because I think this file is ever made following the adjournment of last hearing because I think and defendants in their supplemental brief discuss the Nassar opinion which is as your honors are aware as a title 7 case it came down 2013 and they and there are they suggest in their brief that that ruling has an impact on this court's earlier decision in Hunter the Hunter opinion as your honors are aware the Nassar opinion dealt and I quite frankly we don't believe that Nassar changes anything on Hunter. On Nassar the focus was on the 1991 amendments to the Civil Rights Act because what they did was that they took they took an earlier court ruling Price Waterhouse and Congress create these amendments to the Civil Rights Statute and basically what the court noted Supreme Court noted was that they amended aspects of the Civil Rights of Title 7 dealing with discrimination claims but did not touch the retaliation portions doesn't isn't there a broader message in Nassar and possibly we should have gleaned that message from Gross but we didn't in Hunter and so but now we're we're left with Nassar and it seems to me that the message to be gleaned from Nassar is look at the specific language of the statute in question in order to determine what its causation requirements are. In Hunter we got to the result we got by looking at some regulatory language. I'm not sure that that approach retains any viability in light of what the Supreme Court has now told us very clearly is the correct way to approach these determinations as to what the causation requirement for a particular statute is. What do you have to say about that observation? Well at first glance that might be it might be a conclusion that a person might reach but when you read the decision of Nassar. Well I've read it. I've also wrote Hunter. So I'm having a little bit of trouble knowing how we still get to the same place we were in Hunter given the teachings of Nassar. Well I think there's there was different aspects of the Supreme Court's analysis. For example one of the things that the Supreme Court noted was that again they talked about the distinction between retaliation discrimination cases and one of the arguments that was raised to the Nassar court was that wait a second the EEOC has a manual and the Supreme Court says well that while it's certainly true we would normally consider that we're not going to here because of the fact that the EEOC manual did not address the distinction that the 1991 amendments did to retaliation and to the discrimination claims because again they went they spent a great deal of time as your honor as well we're talking about the distinction that exists and the fact that they're concerned that retaliation claims are far exceeding discrimination claims so they don't want to open the floodgates to retaliation cases when they feel that the language within the statute itself there's a the Supreme Court noted that the Congress consciously put in additional language for discrimination claims that it didn't include within the retaliation claims. I have another question for you and then I'm going to try to shut up because I don't guarantee that I will but my colleagues may have questions for you. In your supplemental brief I don't find any particular evidence that you point to that would permit an inference that Ms. Johnson was retaliated against on some basis other than well I'll ask you a more open ended question. On what evidence do you base the argument now which you didn't make initially not in your complaint that this could be a mixed motive case where's the evidence that would support mixed motive finding? Well I believe that the evidence for mixed motive is very similar if not identical to at least at the initial stage is very identical to a sole motive because whether you're looking at a sole motive or a mixed motive in fact a mixed motive in my opinion the Supreme Court essentially acknowledges is a lesser standard so in other words if you satisfy the sole motive you've basically dealt with the mixed motive altogether and so as we pointed out in our briefs both at the lower court level as well as at this court that on the issue of pretext this issue of whether or not the legitimate reason was the motivating reason we have first the timing issue which as in addition to the timing issue we also have the fact that the employer was aware of all these deficiencies in her performance and in fact in the month leading up to her telling them that she's going to be taking leave they were even saying we don't see any reason to terminate her at this point so what we have here is we have number one we have the timing the fact that she gives them the information and they fire her a week later. Let me ask you just a factual question didn't they say that they didn't fire her not because we don't have any reason now but because of her personal issues that she had some both family issues and personal issues am I remembering incorrect timing on that and they said as a result let's give her another opportunity? I don't know if they directly connected it to her difficulties at home I think the fact that they were saying her numbers were looking okay and they were making improvement if I remember right. Okay so the extra time was before and I know she came back her numbers did improve and then they declined rather rapidly again. Well yeah and again their explanation has been kind of muddied on that issue but we're talking less than a week from the time in which everything seems to be alright to she's being told she's being terminated. They were discussing terminating her. There was some testimony that suggested they may have been but again that goes to their motivation there's no documented proof that that was actually taking place. Well wait a minute where's the requirement for documented proof by that you mean some document in the record I mean their testimony about what happened and what was on their mind is just as much evidence as a document. As we pointed out in our brief. Were you trying to draw a distinction? Well the point I'm making your honor is it goes to state of mind of the individuals and when we talk they want the court to accept it as word that this one week really doesn't mean a week. It's based upon some conversation that we claim to have had we have no proof of it other than you have to take us for our word at it. And when we're faced with that type of situation we cited a case in our standard of review Perry I believe it is P-E-R-R-Y talking about that state of summary judgment is not appropriate. When you're focusing on intent and state of mind of the decision makers because quite frankly that's when you have to look at circumstantial evidence that's where the one week issue comes into play. Is that a coincidence is it a coincidence also that no further actions were being taken. The position of the bank is that your client sales performance relative to her goals was the lowest of all the personal bankers in the northwest region. I mean that's a fact isn't it. Well her performance was like that all the way through leading up to this your honor. Her performance had been subpar all the way up here for quite a bit of time. At some point she got better and then she'd get worse. I mean she was shifted from what being a financial center manager to a personal banker so she wouldn't have the administrative responsibilities and then she did better and then started drifting back again. And that pattern had repeated itself over and over again until she tells him she wants FMLA. So that's you got a temporal proximity. And then we also the fact that up to this point in time there was this roller coaster ride going along steadily ups and downs in her performance always the down points she was always being excused and allowed to improve again. The only thing that changed here your honors was now she's asking for FMLA. And so we're faced with what is their state of mind. Why are they changing? Well we know what she's told about FMLA. We know there's this. We know that. That was a little bit vague and it was going to be in the fall. I mean it was months away. It wasn't like hey next week I got to take off for two months. Well yeah but they obviously knew she was going to be gone. For two to six weeks I think she indicated to them. There had been no mention of her requesting FMLA leave. I mean not that there would have to be an explicit requirement that it be mentioned but there hadn't been. It was I need to take off at some time in the future, some undetermined amount of time. It was like two to six weeks and yeah she said it was for a surgery. It was for recovery from that surgery. So it was certainly a qualifying event under FMLA and they were certainly put on notice. But to get back to your honors original questions about this and I'm running out of time here. On Nassar opinion there was a discrepancy because the EEOC manual did not address that fact. In this case though under FMLA as was pointed out in Hunter there is no differentiation within the statute. And quite frankly as was pointed out there Congress delegated authority to the Department of Labor to formulate and regulate how this is all going to proceed. And in fact that's what they did here. Now I don't think, I mean I think we survive under either sole motive or mixed motive. But I think certainly I believe that mixed motive should still apply. Certainly this is a published decision from this court. Nassar did not expressly overrule Hunter. But we ask that the court follow the rationale of Hunter in concluding that there is a question of fact as to whether or not this motivation on their part was influenced by her protected activity. So your honors I mean I know I'm running out of time here. Unless your honors have any more questions I would certainly rely on the briefs that were filed here. I believe we've done a good job setting forth our positions. Unless your honors have any questions I see my time is pretty much up. You'll have your rebuttal time. Thank you your honors. Good afternoon. Deborah Brower for Fifth Third Bank. Just to initially address the question of mixed motive and that message of Nassar. I think it does certainly give a fairly good idea that the Supreme Court is going to look at the words of the statute. They move from because of in gross is the same thing as because in Nassar and now we're dealing with the word for which if you use the dictionary definitions which the court did use in Nassar means for the reason of or because of. So you would take the position that even though the DOL was given a statutory authority to create the regulations that it did to govern this that that's not the words of the statute and we're done. That's correct. I do believe that the Supreme Court would not defer to the language used in the regulation because you don't need to defer to a regulation when the statutory word is clear. Are the regulations the same today that they were when Hunter was decided? I mean that was seven years ago. Yes I believe that while there have been some revisions in some of the regulations I don't believe that there was a revision in that regulation in Hunter. And again if... And was Nassar, remind me, was Nassar the EEOC manual? It was. It was. And there is a difference. There's no question about it that we're now dealing with a regulation. But I think the Supreme Court... You're dealing not only with a regulation but you're dealing with a regulation with a specific authorization not just the ability to do rule and comment that you sometimes have in association with a statute but an actual statutory authorization that this, that regulation shall govern how this statute is applied. That is correct. Absolutely. And so if you look at that, why doesn't the discussion of a factor, it cannot be a factor in consideration, why wouldn't that be an express reference to a mixed motive? Because the statute itself uses a word that I believe that the Supreme Court would say is textually the same as because of and you don't even need to look at the regulatory language. The statute governs. I'm just struggling with that a little bit because I can understand why the court might say in this situation where you have a manual created, then I'm not even going to look at it. But in this situation where you have a specific statutory authorization for a named purpose, then that becomes part of the statute and it must be considered along with it because it's specifically authorized for that purpose. Do you not see a difference between those two scenarios? There is a difference. But I don't believe you even get to the regulation if the words of the statute are clear. But in addition, the regulation uses the word for also. So there's consistency there. Arguably, it doesn't really matter whether you look to the regulation or not at this point because it points to the same result in light of the intervening case law. Would that be? Yes, I believe that that is correct. And if the regulation were in fact in conflict with the statute, the statute would control. Correct. In addition, a great deal of the Department of Labor's commentary when it was enacting the regulations has talked about how Title VII retaliation cases or FMLA retaliation cases, which is what we're talking about, are to be governed in the same way that Title VII retaliation cases are. And that, again, leads us to Nassar, a Title VII retaliation case. So I believe, based on Nassar, whether that analysis was as thorough as one might want, I think that the Supreme Court, when it hears this decision, is going to determine that under the FMLA, anti-retaliation claims are governed by Nassar and mixed motive is not permitted. I would also note that in this case, Ms. Johnson did not plead mixed motive. And not only did she not address it in her complaint, she specifically talks about a pretext analysis, which is inconsistent with a mixed motive analysis. But it wasn't addressed in her motion, her response to the motion for summary judgment. And even though Judge Rosen at the district court level raised it in his opinion, Johnson did not mention it in her, or address it in her response brief. I'm sorry, in her brief on appeal here. So it's not quite a waiver argument, but she has not presented her case to this court or the case below as a mixed motive analysis. What Johnson focused on in her responses to the various motions was a variety of arguments saying that the Fifth Circuit's decision was pretextual. It seems very clear that on a, once you go through the McDonnell-Douglas analysis in this circuit, timing alone is not sufficient to establish pretext. So Johnson has cast her net fairly widely in finding arguments in favor of pretext. All of which the district court found unavailing and we urge the court to come to the same conclusion. She argued, for example, that Fifth Third's, a witness had clarified his testimony and that rose to the level of a changing reason for termination, which clearly from the record is not accurate. She also argues that Fifth Third did not follow its own policies. But that is based only on Johnson's personal belief of her policies, not on the written policy. There was no written policy in Fifth Third. On her change, on the change of testimony, wasn't that a fairly significant distinction to say, to begin with a statement that we want to be able to factor that in to her, I knew she was up for termination or however the language went and we wanted to be able to factor that in. When that was said, made a significant difference? Well, I think that, again, looking at the actual testimony provides the answer to that. The question was, when did you ever talk to your boss about that she was on FMLA leave? And the witness said that he thought that he had talked to him about it at the time the decision was made, clarified his testimony in the same deposition, saying no, it was when we were talking about the lawsuit, and that was confirmed by the other party to the conversation. In the initial testimony, he was saying, I did that so it could be factored in. That to me is the language that is concerning, because it's saying, as we are considering her for termination, we are going to factor in this issue. I do believe there is Sixth Circuit law that articulates that an employer should not be, and I think it was in a Dow Chemical case, the employer should not be punished for taking into account some of the litigation possibilities that might arise from making a decision as to when it's made. So I'm not sure that that testimony carries the weight that Ms. Johnson would have it carry. And it certainly is very different from those cases in which the employer actually does change the reason for the discharge decision, which has never happened here. Fifth Circuit has been very clear that her failed sales performance was the basis for her termination. Right. What do you make, though, of the fact that, I mean, Johnson's supervisor was Engstrom, right? Correct. And he told his supervisor, Hotchkiss, that he wanted to, quote, factor in Johnson's respective leave into the decision to fire her. Now, that doesn't sound good for you, does it? No, it doesn't, and that's the testimony that, in the same deposition, he said that, when I said that, it wasn't at the time of the decision to hire, it was at the time when the lawsuit was initially filed. Well, I don't find any mention of that particular testimony in Ms. Johnson's supplemental brief, so I don't see that that's really, unless I'm missing it, and I've looked a couple of times, I don't think that's, I mean, I don't believe, it may have been in her initial brief, but since she's never argued mixed motive until prompted by this court, and when she talks about mixed motive, she doesn't mention this testimony at all, I'm not sure the plaintiff attaches any importance to it. And the plaintiff's supplemental brief also dealt, did not address the Nassar and the mixed motive analysis that might be applicable to FMLA claims, but focused on White v. Baxter, which was a pre-Nassar Title VII case. It was actually focused on the part of Title VII that was amended after Pricewaterhouse, so I don't believe White v. Baxter is relevant, and I think that was the focus of Ms. Johnson's supplemental brief. The issue that plaintiff spent most time on in the argument, and previously in the briefs, was this question of Johnson's performance had always been bad, as evidence of pretext, and I wish to address that, because it puts an employer in an impossible situation. The argument is, Johnson wasn't fired soon enough. She should have been fired before. But how many warnings or counseling efforts should an employee get? And isn't that the employer's decision? Johnson's work performance was not steadily across the board, always subpar. There were times in which she improved. She would receive a counseling, and she would improve for a month or so. She raised issues of personal family problems, and was given additional opportunities. And if an employer is required at the first sign, or even the second sign of bad work performance, that really takes away from the employer its business judgment, its ability to decide what's best for the company, in terms of trying to get a return on its investment. An employee is an investment. You hire, you train, you counsel. So for Fifth Third to be penalized here, because it gave Ms. Johnson additional chances, seems to me to turn everything on its head. And if a court were to decide that, I mean, what's the number of counselings that you get? Is there a bright line test? You get three counselings, and if you don't fire the person right then, after three, then it can be seen as pre-taxed. The problem is, though, that you kept living with it, hoping she'd improve, but the decision to fire wasn't until she tells you she wants to take leave in the future. Well, that's true. And she did improve, but she didn't approve in a sustained way, which was actually what Fifth Third's goal was. And if all we have is the timing, the timing is not enough. We're thrust back on that. I mean, what she seems to want to do is to say that they, you know, they kept putting up with her poor performance, and so the fact that it wasn't until after she let them know she was going to have surgery, that they did in fact terminate her, that that somehow helps the timing prove that she has to, that she would have to present in order to create a genuine issue of material fact. And I'm not sure that follows, and I do agree that its policy implications are not great for employers. Or for employees. That's true, too. They fire me first, so yaha, and now I've got you. You know, and all those months you put up with my poor performance are now held against you. But I don't, that's the argument she makes, I think. It is exactly the argument. I think it's weakened, I don't think it's strong to begin with, but it's weakened by other evidence. Ms. Johnson admits that there was a co-worker who took FMLA for exactly the same surgery that she was indicating that she might need six or seven months in the future. And that employee returned to work without any negative consequences. So that undercuts, I think, that the employer, upon hearing that maybe she would be gone some months in the future for a period of two weeks, perhaps only, would suddenly develop this anti-FMLA bias. And there really isn't anything. There's no comments about hostility towards FMLA. She has no other evidence of other people treated badly. She admits that other people were terminated, and she was involved in those discharge decisions for poor sales performance. So I think looking at all of that evidence suggests that the decision that Fifth Third made to terminate her was not pretextual, was not based on sex discrimination or age discrimination, and certainly not FMLA discrimination. If there's no more questions, thank you. If I may very briefly, Your Honors, with regards to the supplemental brief, my understanding when I responded to that was that the question was whether or not mixed motive applied to FMLA, and that's how I responded by legal analysis as to the applicability of mixed motive to FMLA. Certainly, we believe that the testimony which we quote on page 10 of our principal brief on appeal applies equally with both mixed motive as well as sole motive analysis, specifically what Judge Gilman and Judge Strange was talking to the defense counsel about the factor being a factor. So the fact of the matter is that whether we look at it from a mixed motive, sole motive, this testimony is very damaging to the defendant because it shows that this was not just something that they were not concerned about. By the way, there's no mention here in this quote about litigation, and quite frankly when we... Can I ask a question? Yes. Does Fifth Third have its only policy that exists coextensive, or not coextensive, but alongside FMLA? I mean, how do we know  from the record? Because she had indicated she was taking FMLA leave and the only thing we have is that it was an FMLA qualifying event. But did she also have other leave available? I'm not aware of any other. Again, I guess the record would have to speak for itself. We don't know. Yeah, all we know is that she's an employee, she's a qualifying employee, she could certainly take FMLA, and as we all know from the case that's been cited through the years, you don't have to say I want to take FMLA. All you have to do is identify... I'm not suggesting you do, but I'm not suggesting that she wouldn't have had FMLA on its mind. Well, and again, Your Honor, I guess that's to see on its mind. We're coming back to the state of mind of the defendant, and then what we have here is we have the timing, we have the statements by these supervisors, which, by the way, I think it's very significant, Your Honors, that when we questioned this witness, I think it's pretty clear what the testimony was. And then there's a break taken, and all of a sudden he said, oh, no, no, we talked about this, this is something I would have talked about afterwards. But when you read his answer, I was wanting to factor, yeah, I let him know that we have leave coming up. By the way, he uses the word leave, FMLA. Potentially because I was wanting to factor that in because we were having, that doesn't sound like referring past tense. Do you think he was referring to that as a basis for termination? Isn't it just as likely that he thought they ought to take into account whether she was present at the time she was terminated? In other words, the timing? Well, quite frankly, they have declined to provide an explanation. In fact, we even asked him what the response of his supervisor was. Do you recall anything that Lee told you? I don't. Then he makes an assumption afterwards, but he says I don't know. And then why are they ignoring this? Why are they refusing to acknowledge now, after a break, the termination? Why are they being defensive about that? I mean, if it's no big deal, if it's much to do about nothing, then why after their break are they coming in there and changing the entire narrative so now it's taking place well after she's gone? That goes to the state of mind, Your Honor. Under Perry, which we cite in our brief, state of mind is an intent. This is exactly, this is something the jury should have decided at time of trial. Thank you for your time, Your Honor.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you for the argument both of you have given and we'll consider the case carefully.